IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TYLER WINSTEAD, )
)
Plaintiff, )
)
v. ) 1:19CV803
)
ANDREW SAUL, )
Commissioner of Social Security,[1] )
)
Defendant. )

ORDER, MEMORANDUM OPINION, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Tyler Winstead ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.    PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on May 5, 2014, alleging a disability onset date of October 1, 2013. (Tr. at 28, 172, 241-53.)[2] His applications were denied (Tr. at 172-93), and thereafter, Plaintiff requested an administrative hearing de novo

---

[1] Andrew Saul was confirmed as the Commissioner of Social Security on June 4, 2019, and was sworn in on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Nancy A. Berryhill as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #13].

before an Administrative Law Judge ("ALJ") (Tr. at 220-22). Plaintiff, along with his attorney and an impartial vocational expert, attended the administrative hearing on August 1, 2017. (Tr. at 28.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act in a decision dated October 2, 2017 (Tr. at 39), and, on October 24, 2018, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 17-22.)

Thereafter, Plaintiff, now proceeding *pro se*, filed a Complaint in the United States District Court for the Western District of North Carolina. [Doc. #1.] Prior to Defendant's Answer, the case was transferred to this Court. [Doc. ## 10, 11.]

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270

F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)).

> Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.

Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

## III. DISCUSSION

In the present case, the ALJ found that Plaintiff had "worked after the alleged disability onset date but this work activity did not rise to the level of substantial gainful activity" since October 1, 2013, his alleged onset date. (Tr. at 30-31.) Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> Chronic post-traumatic headaches, an anxiety disorder, and a depressive disorder[.]

(Tr. at 31.) The ALJ found at step three that these impairments did not meet or equal a disability listing. (Tr. at 31-33.) The ALJ then assessed Plaintiff's RFC and determined that he could perform light work with the following, additional limitations:

> [Plaintiff] must avoid work that requires climbing on ladders, ropes, and scaffolds; should avoid concentrated exposure to extreme cold or heat; should avoid workplace hazards such as unprotected heights and dangerous moving

5

machinery; could perform jobs that are unskilled and that require the performance of only simple and routine tasks and jobs that are low stress in nature that require only occasional simple decision-making and that would require only occasional changes in the work duties or work setting; could have occasional contact with coworkers and must avoid working in a team setting; and would be limited to having rare contact with customers or the general public.

(Tr. at 33.)

Based on the RFC determination, the ALJ found under step four of the analysis that Plaintiff could not perform his past relevant work. (Tr. at 37-38.) However, the ALJ also determined at step five that, considering Plaintiff's age, education, work experience, RFC, and the vocational expert's testimony as to these factors, Plaintiff could perform other jobs that exist in significant numbers in the national economy. (Tr. at 38-39.) The ALJ therefore concluded that Plaintiff was not disabled for the period from October 1, 2013 through the date of the decision on October 2, 2017. (Tr. at 39.)

On February 10, 2020, two months after the December 10, 2019 deadline for dispositive motions set by this Court, Plaintiff filed a Letter Motion [Doc. #15] notifying the Court of his change of address and requesting that his case be transferred back to the Western District. Two days later, on February 12, 2020, Plaintiff filed a Letter Motion for Judgment [Doc. #16] asking that his case be remanded in light of additional evidence from Dr. Sarah G. Cox. For the reasons set out below, both of Plaintiff's motions should be denied.

First as to the Motion to Change Venue, Plaintiff originally filed this case in the Western District of North Carolina, but it was transferred to this District because Plaintiff was living in a county within the Middle District of North Carolina at the time the case was filed. Plaintiff reports that the has now moved to a new county that is within the Western District

of North Carolina, and in his letter reporting his new address, he asks to have the case transferred closer to his new home because he "do[es] not drive" and it "would be harder to travel far." That letter was docketed as a Motion to Change Venue. However, 42 U.S.C. § 405(g) provides for jurisdiction as follows:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. <u>Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides</u>, or has his principal place of business.

This determination is made at the time the case is filed. Thus, the case is properly in this District because Plaintiff resided in this District at the time the case was filed. Under the ordinary rules for venue, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). However, even if that provision applies to Social Security appeals under 42 U.S.C § 405(g), transfer would not be appropriate here because Defendant does not consent to transfer, [Doc. #17], and when Plaintiff commenced this action, the only district in which he could have brought this case was the Middle District of North Carolina since he resided in this District. Moreover, transfer is not warranted in any event, because no travel is necessary as the matter will be resolved on the written filings. Therefore, the Motion to Change Venue will be denied.

7

Second, as to the Motion for Judgment,[5] Plaintiff has not presented any challenge to the ALJ's decision, but has instead submitted new evidence from Dr. Sarah Cox. The new evidence is a two-page form entitled "Report of Medical Examination Requested by Cabarrus County Social/Human Service Agency" dated October 16, 2019. (Pl. Br. [Doc. #16] at 4-5.) In this assessment, Dr. Cox completed a "check-box" form indicating that Plaintiff is permanently limited to part-time work 3 days per week, but with no limitations on sitting, standing, bending, lifting, carrying, walking, or understanding/following instructions. In addition, attached to that form is a single page signed by Dr. Cox, with Plaintiff's name filled in on a blank, stating that, "This is to certify that  Tyler Winstead  is currently unable to work at this time." (Id. at 3.) Plaintiff includes no treatment records from Dr. Cox or her practice, and the opinion appears to be based primarily, if not entirely, on a September 30, 2019 examination, but without further explanation.

This Court may not consider new evidence that Plaintiff did not submit to the ALJ or the Appeals Council. See Smith v. Chater, 99 F.3d 635, 638 n.5 (4th Cir. 1996). Instead, the

---

[5] Defendant contends that the Motion for Judgment is untimely, and that the case should be dismissed pursuant to Federal Rule of Civil Procedure 41(b), for failure to comply with a Court Order. Under Federal Rule of Civil Procedure 41(b), "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b); see also Link v. Wabash R.R. Co., 370 U.S. 626, 629-32 (1962) (noting that federal courts have the inherent power to dismiss an action for failure to prosecute either sua sponte or on the motion of a party). "The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." Link, 370 U.S. at 629-30. In considering whether to impose such a dismissal, the Court should consider "(1) the degree of personal responsibility of the plaintiff, (2) the amount of prejudice caused the defendant, (3) the existence of 'a drawn out history of deliberately proceeding in a dilatory fashion,' and (4) the existence of a sanction less drastic than dismissal." Chandler Leasing Corp. v. Lopez, 669 F.2d 919, 920 (4th Cir. 1982); see also Ballard v. Carlson, 882 F.2d 93, 96 (4th Cir. 1989) (upholding dismissal of pro se plaintiff's claims, and noting that pro se litigants, like other litigants, "are subject to the time requirements and respect for court orders without which effective judicial administration would be impossible"). Here, the parties have now filed cross-motions for judgment, there is no prejudice to Defendant, and the matter can be resolved on the merits. Therefore, the Court is not recommending dismissal pursuant to Rule 41(b), and is instead recommending resolution on the substance of Plaintiff's Motion for Judgment, as set out above.

Case 1:19-cv-00803-WO-JEP   Document 20   Filed 09/01/20   Page 8 of 12

Court can remand the case under sentence six of 42 U.S.C. § 405(g) for the Commissioner to consider the new evidence, if Plaintiff can demonstrate that the evidence qualifies as both new and material, and that good cause exists for the failure to submit the evidence to the ALJ or the Appeals Council. See Wilkins v. Secretary, Dep't of Health & Human Servs., 953 F.2d 93, 96 n.3 (4th Cir. 1991). Section 405(g) provides as follows:

> [A federal district court] may at any time order additional evidence to be taken before the Commissioner [], but <u>only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding</u>; and the Commissioner [] shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C. § 405(g) (emphasis added). "Evidence is new within the meaning of [§ 405(g)] if it is not duplicative or cumulative" and "is material if there is a reasonable possibility that the new evidence would have changed the outcome." Wilkins, 953 F.2d at 96.

In the present case, Plaintiff could not have presented Dr. Cox's evaluation at the time of his hearing because it was not issued until October 16, 2019, two years after the ALJ's adverse decision. However, this fact ultimately undermines Plaintiff's Motion, since, in order to be material, evidence must relate to the time period at issue. Here, Dr. Cox notes Plaintiff's 2016 diagnosis of traumatic brain injury with cognitive impairment, but nothing in the evaluation indicates that the limitations opined by Dr. Cox extended back to that date. The form simply reflects that Dr. Cox treated Plaintiff on September 30, 2019, two years after the ALJ's decision, and that while Plaintiff does not have any limitations in sitting, standing,

9

bending, lifting, carrying, walking, or understanding/following instructions, his "current work capacity" as of October 16, 2019, is part-time work 3 days per week and he is "currently unable to work at this time." There is no further explanation of this limitation, and as noted above, no treatment records or other evidence. The ALJ in this case included in the record and considered in his decision all of Plaintiff's actual treatment records from the relevant time period, including Plaintiff's concussion in September 2016 and subsequent headaches, and the subsequent treatment and mental status examination by Plaintiff's treating neurologist. (Tr. at 31, 32, 33, 34, 35, 36, 37, 544-52, 555-57, 591-601, 465-69, 504-07, 689-90.) There is no basis to conclude that Dr. Cox's form opinion on Plaintiff's "current work capacity" two years later would change that determination.

Moreover, medical source statements that a claimant is "disabled," "unable to work," or, as in this case, can work less than full-time, do not constitute "medical opinions" under 20 C.F.R. § 404.1527(a)(1), but are statements "on issues reserved to the Commissioner because they are administrative findings dispositive of a case." 20 C.F.R. §§ 404.1527(d), 416.927(d). Accordingly, the Commissioner "will not give any special significance" to such statements. Id. Here, Dr. Cox provides no explanation for her opinion in the present case, nor does her evaluation include any functional limitations relevant to the ALJ's disability determination.[6] Thus, it does not appear that Dr. Cox's form opinion would affect the ALJ's determination in any event.

---

[6] As noted above, Dr. Cox did not include any limitations on sitting, standing, bending, lifting, carrying, walking, or understanding/following instructions. In reviewing a list of activities, the only activity Dr. Cox opined that Plaintiff could perform for less than 8 hours per day was "Attend Training Classes." [Doc. #16 at 5.] This fails to relate to any functional limitation considered in the RFC assessment.

10

In short, because Dr. Cox's statements (1) assess Plaintiff's "current work capacity" as of October 2019, two years after the ALJ's October 2, 2017 decision, and (2) contain no functional limitations germane to the issue of disability, or any other explanation or support, Dr. Cox's 2019 statements are not material to the inquiry in this case. Plaintiff has failed to show that there is a reasonable possibility that the new evidence would change the ALJ's determination in this case.

The Court notes again that the determination at issue in this case only relates to the time period up to October 2, 2017. If Plaintiff's condition has worsened since that time, or if he has been treated for new impairments not considered by the ALJ, he can file a new application for consideration and review of that evidence in a new administrative proceeding. See Horne v. Berryhill, 2017 WL 1155053, at *1 (M.D.N.C. Mar. 27, 2017) ("To the extent that the new evidence might relate to a time period after the date of the administrative determination, based on Plaintiff's contention that K.L.H.'s condition has 'gotten worse,' Plaintiff remains free to present the evidence in a new administrative application as to the later time period.").

Because Plaintiff suggests no other basis for remand, Plaintiff's Motion for Judgment should be denied.

IT IS THEREFORE ORDERED that Plaintiff's Letter Motion to Transfer Case [Doc. #15] is DENIED.

IT IS RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Letter Motion for Judgment [Doc. #16] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #17] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 1st day of September, 2020.

                                                          /s/ Joi Elizabeth Peake
                                                 United States Magistrate Judge